## In re MOSHER.

No. 431. Opinion Filed June 1, 1909.

(102 Pac. 705.)

1. **LIMITATION OF ACTIONS—Statutes—Construction.** In construing a statute of limitations, it must, so far as it affects rights of action in existence when the statute is passed, be held in the absence of a contrary provision to begin when the cause of action is first subjected to its operation.

2. **ATTORNEY AND CLIENT—Disbarment—Authority to Disbar.** Section 33 of the schedule to the Constitution which provides that all attorneys at law, licensed to practice in any court of record of the territory of Oklahoma, or in any of the United States courts for the Indian Territory, or any court of record of any of the Five Civilized Tribes, shall be eligible to practice in any court of the state without examination, does not preclude this court from inquiring into the moral qualifications, or to disbar those who fall within its terms, and who claim the rights conferred thereunder, when the contingency arises requiring the exercise of such power.

3. **ATTORNEY AND CLIENT—Disbarment—Grounds—Fraud Upon Court.** An attorney at law who had been disbarred in a sister state for fraud and deceit, and who within a short time thereafter moved to the Indian Territory and was admitted to practice in the courts of that territory, and on such admission had himself enrolled in this court without disclosing such previous disbarment, is thereby guilty of practicing such fraud and deceit as to require his disbarment. when the same is properly brought to the notice of this court.

(Syllabus by the Court.)

Original proceedings for the disbarment of L. L. Mosher. Respondent disbarred.

*Geo. S. Ramsey, Thomas D. McKeown,* and *Benedict Elder,* committee appointed by Bar Commission to hear and take testimony and file same with recommendations.

*In re.* Mosher.

*Robert F. Blair, B. J. Beavers,* and *Earnest Ray,* committee appointed by the district court of Wagoner county in behalf of prosecution in Supreme Court.

*W. T. Hunt, Chas. G. Watts, C. E. Castle,* and *J. II. Ford,* for L. L. Mosher.

PER CURIAM. On the 16th day of September, 1908, the district court of Wagoner county appointed a committee to prepare and file in the Supreme Court charges for the disbarment of L. L. Mosher. Under this appointment charges were prepared and filed in this court on October 1, 1908, which on being referred to the Bar Commission charged with the duty of assisting this court in proceedings of this character, a committee was by it appointed for the purpose of hearing the same and making a report with recommendations. Hearing was had, and the report so provided for was filed in this court on April 2, 1909, recommending that the charges be sustained, and the respondent be disbarred. Exceptions were filed, and an oral argument had before the court, and it now becomes our duty to consider and pass upon the entire matter.

Generally speaking, the proceedings are based upon two charges: First, that the respondent was disbarred upon a judgment of the Supreme Court of the state of Iowa, prior to his removal to the Indian Territory, and that, without disclosing this to the courts of that territory, he was admitted to practice, and that this was deceit of such a character that when disclosed would call for the revocation of his license; second, that at a county convention of Wagoner county respondent was guilty of bribing, and offering to bribe, some of the delegates to the convention into nominating him for one of the officers of that county. While the evidence and testimony offered thereunder is relevant and material to the issues presented, we do not deem it necessary, for the consideration of this case, to consider or pass upon the second charge, but will confine ourselves to the issues involved in the first one.

The record discloses that the respondent, prior to his removal

to the Indian Territory, was a resident practitioner of the state of Iowa, duly licensed to practice therein; that a proceeding was brought in the district court of Warren county to revoke his license, which was sustained; and, on the cause being appealed to the Supreme Court of that state, its judgment was approved on April 5, 1905. Thereafter he moved to the Indian Territory, and on October 11, 1905, on motion and examination in open court, he was admitted to practice by Judge Humphrey, Judge of the United States Court for the Central District of the Indian Territory. On December 15, 1906, he was, on invitation of Judge Louis Sulzbacher, Judge of the United States Court for the Western District of the Indian Territory, admitted to practice in that court. The committee found as a fact, based upon the evidence of the presiding judges of these courts, that the respondent did not inform them of his having been disbarred by the courts of Iowa. The respondent bases no claim of right upon his revoked license of Iowa. He has filed no brief, but contends in his answer that the statute of limitations of one year, provided for by the statutes of the territory of Oklahoma, had elapsed at the time of the institution of these proceedings, and by reason of this fact the bar has fallen, and this court is precluded from examining into the facts existing at the time of his admission; and, second, that section 33 of the Schedule to the Constitution (Bunn's Ed. § 482) validated his previous admission, and entitled him to continue practicing in the courts of the state. We are not able to agree in either of these claims of respondent.

The statute of limitations to which respondent refers is contained in section 12, c. 7, par. 234, Wilson's Rev. & Ann. St. Okla. 1903, and reads as follows:

"*   *   * All actions for suspension or removal shall be brought within one year after the act charged was committed, and not thereafter."

This act became effective in the state of Oklahoma on November 16, 1907. This proceeding was instituted, as we have heretofore observed, on October 1, 1908, within one year after

the establishment of the state Constitution. Respondent claims his rights under his license, granted him under and by virtue of the laws of the state of Arkansas, then in force in the Indian Territory. Conceding, for the purpose of this discussion merely, that this provision of our statute pertains to a case under these facts and of this character, we will notice it. We have examined the statute of Arkansas for the purpose of ascertaining whether or not it contains a statute of limitations applicable to actions for the disbarment of attorneys for causes of this character. Our attention has been called to none, and we do not find that one exists.

In this situation the Supreme Court of the state of California, in the disbarment case of *In re Lowenthal*, 78 Cal. 427, 21 Pac. 7, says:

"As to the objection made that the offenses charged are barred by the statute of limitations, it appears that the acts complained of were committed some three years since. We do not understand that a charge of this kind can be barred by the statute of limitations, or that it should be, under any circumstances. The fullest opportunity should be given to investigate the conduct of an attorney who is charged with a violation of his duties as such; and, while this court might not be willing to disbar or suspend an attorney if it appeared that there had been unreasonable delay in the presentation of the charges, so that a fair opportunity could not be had for procuring the witnesses and meeting the accusation, we are not prepared to say, as a matter of law upon this demurrer, that the accusation is barred, either by the express terms of the statute of limitations, or by analogy."

Statutes of limitation are usually given a prospective construction, and to take effect and become operative on the date of their passage. They are never given a retroactive effect, either to destroy a cause of action, or to validate one, except where this is clearly shown to have been the manifest intent of the lawmakers. *Theis v. Board Co. Com'rs of Beaver County*, 22 Okla. 333, 97 Pac. 973; 19 Ency. Law, p. 174; *Huber v. Zimmerman et al.*, 8 Okla. 573, 58 Pac. 737; *Southgate v. Frier*, 8 Okla. 435, 57 Pac. 841. Therefore, considering the date on which this statute became effective in connection with the date of the inception of

these proceedings, even if it is applicable, it will be seen the cause is not barred.

Section 33 of the Schedule to the Constitution provides:

"All attorneys at law licensed to practice in any court of record of the territory of Oklahoma, or in any of the United States courts for the Indian Territory, or any court of record of any of the Five Civilized Tribes, shall be eligible to practice in any court of the state without examination."

It is the claim of the respondent that, under the provisions contained in the foregoing section, he was entitled to continue to practice in the courts of the state; that no act or conduct on his part preceding the adoption of the Constitution could thereafter be made the basis of an accusation or charge in this court on which he could lawfully be denied the right to continue practicing therein. We cannot view this section in any such light. The statutes of the territory of Oklahoma at the time of its admission as a state provided for examination, by a commission appointed by the Supreme Court, of all applicants for admission to practice in the courts of the territory. This provision was brought over and made a part of the law of the state by section 2 of the Schedule. Under this situation none of the attorneys admitted to practice in the Indian Territory would have been eligible to practice in the courts of the state, except upon taking the examination before the commission above referred to. To obviate this difficulty section 33 was incorporated in the Schedule, and its scope and real meaning would be emphasized, and perhaps made a little more clear, if it read as if the phrase "without examination" preceded the balance of the section. Let us see. It would then read: "Without examination, all attorneys at law licensed to practice in any court of record," etc., "shall be eligible to practice in any court of the state." This, it seems to us, makes clear the intent, scope, and purpose of this section. If it had the meaning respondent claims for it, the phrase "without examination" would be meaningless, instead of being, as it clearly is, a limitation on the entire section. Taking this view of the situ-

Vol. 24.—5

ation, which in our judgment is the correct one, respondent's right to continue as a licensed attorney came under the jurisdiction of the Supreme Court of the state, by virtue of its power and sole authority, under the new sovereignty, to admit and license attorneys to practice law.  By reason of this it had the same authority to inquire into and render judgment in this matter that the original court which granted license to the respondent would have had, subject only to a change of procedure incidental to, and concurrent with, its establishment.

When respondent came to the Indian Territory, and sought admission and a license to practice in the United States Court for the Central District thereof, he was then, approximately, 50 years of age.  Judge Humphrey, who was the judge of that court at that time, and who examined him, testified that he did not know, and that no one communicated to him, the fact that respondent had been disbarred in Iowa.  He states that his impression was that Mr. Mosher was an old, experienced lawyer of good character, and well recommended, and that, there being no objection on the part of any of the members of the bar, he was admitted just as other strangers coming to the court as to character were admitted.  Respondent took with him to that court letters of recommendation from a number of prominent well-known statesmen of Iowa.  He testifies that he did not inform Judge Humphrey of his disbarment, but that he did inform Mr. J. H. Wilkins, whom he desired to have present the matter of his admission to the court.  Mr. Wilkins was at that time United States District Attorney for that district.  He was by respondent shown several letters of recommendation from prominent men whose general reputation he knew, but he testified that respondent did not state to him, or in any manner inform him, that he had ever been disbarred, nor did he or Judge Humphrey know of this fact.  This action on the part of respondent took place on October 11, 1905, just six months after the Supreme Court of Iowa had delivered its opinion affirming the judgment of the lower court.  The report of that case is found in 128 Iowa, 82, 103 N. W. 105.  We will not review

the finding of that court here. Suffice to say, the conclusions reached were that the respondent had been guilty of deceit, not only toward his client, but toward the courts.

The question now arises: Was the failure of respondent to disclose to the court in which he secured admission the fact that he had just previously been disbarred in the state from whence he came sufficient to justify this court, in which he now claims the right to practice, predicated upon that admission, in disbarring him? Section 5, c. 7, par. 227, Wilson's Rev. & Ann. St. Okla. 1903, provides:

"An attorney and counsellor who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge or party to an action or proceedings, is liable to be disbarred," etc.

The question arises, then, Was this action on the part of respondent a deceit as the same is used in that section? We think it was, for it is not tolerable to conclude that Judge Humphrey would have admitted him to his court to practice had he known and been informed that, just six months prior thereto, the highest court of a sister state had stripped him of his license to practice in that state. Acting upon this assumption, which we deem entirely reasonable, we conclude that the deceit then practiced to secure admission is sufficient to justify us now in depriving respondent of that which he wrongfully secured. If knowledge would have precluded his being admitted, his failure to impart it will not estop the court from acting as it would then have acted when it is acquired.

In discussing this proposition, Lord Chief Justice Cockburn, in *Re Hill,* L. R. 3 Q. B. 543, quoted with approval in the case of *In re Wellcome,* 23 Mont. 213, 58 Pac. 47, said:

"If these facts had been brought to our knowledge upon the application for this gentleman's admission, we might have refused to admit him; and I think the fact of his having been admitted does not alter his position. Having been admitted, we must deal with him as if he were now applying for admission and as, in the case of a person applying for admission as an attorney, we should

have considered all the circumstances, and either have refused to admit or have suspended the admission for a certain time, so where a person has once been admitted, we are bound, although he was not acting in the precise character of an attorney, to take notice of his misconduct."

. The case of *Dean v. Stone et al.,* 2 Okla. 13, 35 Pac. 578, was one wherein a proceeding was brought against an attorney for disbarment in the district court of Oklahoma county. On judgment being rendered against him he appealed to the Supreme Court of the territory. The respondent produced in the lower court a certificate admitting him to practice law in the state of Indiana. This license had been revoked. Without disclosing this fact to the district court of Oklahoma county he moved for, and secured, his admission upon the strength of it. The Supreme Court of the territory of Oklahoma, referring to this conduct, and to the complaint which set forth these allegations, said:

"We think this complaint states a good cause of action. It comes squarely within the provisions of section 5, c. 6, p. 117, St. Okla. T. 1893, which makes it a cause for disbarment for an attorney to be guilty of deceit or collusion, or to consent thereto, with intent to deceive a court or judge. It is evident, from the allegations of the complaint in this case, that the whole purpose and object of the appellant was to deceive the court and secure his admission to the bar upon the strength of a certificate which he knew had been revoked by a solemn judgment of a court of record and, even if it did not come within one of the statutory causes for suspension of an attorney, a fraud of this character could certainly be inquired into, and a proper remedy applied. Courts of general jurisdiction have the inherent power to purge themselves from a fraud perpetrated upon the court by an officer of the court, or by one to secure for himself the privileges of an officer of the court."

While respondent in the case at bar did not rely upon the authority of the certificate to secure admission, yet he did not inform the judge of his recent disbarment, which was clearly his duty, and it was this failure on his part in our judgment which secured his admission. In this connection, see, also, the cases of·

*In re Bradley,* 14 Idaho, 784, 96 Pac. 208, and *In re Woodward,* 27 Mont. 355, 71 Pac. 161.

The age and situation of this respondent appealed strongly to the sympathetic side of the Bar Commission, as they do to this court. It is a matter of regret and sorrow that a proceeding of this character is ever necessary, and this is always augmented and increased when the party against whom the action is taken has reached that period of life when it is practically impossible for him to readjust himself to the situation in which his misfortune and wrongful conduct have thrown him. The natural feeling, however, cannot overcome the plain requirements of our duty. If respondent's course is justified, the result would be that the bar of Oklahoma would afford a sanctuary and house for refuge for those practitioners intolerable to the courts of other states. This would be a reflection on our court and bar, and in the end bring all in disrepute. So, until respondent shall have relieved himself of the burden under which he rests, he is not eligible for admission in this state.

From the whole matter, therefore, it having been made to appear that respondent's right to practice in this state is predicated upon a license obtained by fraudulently concealing his previous disbarment, thereby practicing a deceit upon the court admitting him, and his certificate of enrollment in this court being based upon the same license, they are therefore hereby revoked, canceled, and held for naught, and he is for and on this account disbarred.

In this connection the court desires to express its high appreciation to the committee and counsel for the promptness, accuracy, and thoroughness with which they have discharged the unpleasant duty assigned them.